IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROGELIO "ROCKY" ALVARADO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-4109-K |
| | § | |
| SPRINT/UNITED MANAGEMENT | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Sprint/United Management Company's Motion for Summary Judgment, filed May 31, 2013. The court has considered the motion, response, reply, the summary judgment record, and the applicable law. For the reasons stated herein, Defendant's Motion for Summary Judgment is **granted,** and Plaintiff's claim against Defendant is **dismissed with prejudice.**

### I.    Factual and Procedural Background

The majority of the facts set forth herein are undisputed; however, where they are disputed, Plaintiff's version of the facts is presented. Plaintiff Rogelio "Rocky" Alvarado ("Alvarado")  was employed by Defendant Sprint/United Management Company ("Sprint") as a Branch Sales Manager. Alvarado's responsibilities at Sprint included managing a team of approximately eight sales representative. Alvarado reported to Reginald Marable ("Marable"), who was a Regional Sales Director.

1

Most of Sprint's employees are employed on an "at will" basis, meaning that either the employee or Sprint can terminate the employment relationship with or without cause and with or without notice.  Only a few employees of Sprint who are high-level corporate employees have employment contracts with the company.  Sprint's Employee Guide discloses the at will nature of the employment relationship to employees, and this policy is also found in Sprint's electronic database of its employment policies.  Both the Employee Guide and the electronic database also state that only Sprint's Chief Executive Officer has the authority to alter an employee's at will employment status, and that any such alteration must be in writing and signed by the Chief Executive Officer or Chief Operating Officer.

Upon hire, employees must acknowledge that they have received and read these policies. Also, Sprint's I-Comply program requires employees to acknowledge on a yearly basis that they can locate the employment policies found in Sprint's electronic database, and understand that the policies apply to them during their employment with Sprint. Under the I-Comply program, Alvarado most recently acknowledged on July 18, 2011 that he had access to and reviewed Sprint's Employee Guide during his employment, that he understood it was his responsibility to review, understand and follow the policies in the Employee Guide, and that he could locate Sprint's employment policies and understood that they applied to him.

2

Sprint also has a Code of Conduct that applies to its employees. The Code of Conduct is referenced in the Employee Guide and is also contained in a stand-alone document.  In pertinent part, the Employee Guide summarizes the Code of Conduct as follows:

> Demonstrating integrity is one of the core values at Sprint.  Employees who behave in a dishonest, unethical or illegal manner not only reflect poorly on the company but on all of us.  All Sprint employees are expected to conduct themselves with the highest level of integrity in all circumstances.  Conduct that is not allowed includes: acts of dishonesty...

Employees can access the Code of Conduct in the electronic database, and are required to review the Code of Conduct annually and acknowledge through I-Comply that they will comply with the policy.  Alvarado most recently acknowledged and agreed to the Code of Conduct on July 18, 2011.

Sprint instituted a Driver Policy in July 2010, which applied to all employees whose duties involved over the road travel, including sales representatives, Branch Sales Managers, and Territory Sales Managers.  Under the Driver Policy, affected employees were required to maintain a safe driving record, or they would otherwise be prohibited from driving on Sprint business.  Sprint assigned points to various traffic infractions, moving violations, and vehicular accidents.  If an employees total points was more than 9, that employee's driving record was deemed unsafe.  Certain violations, such as DUIs were considered automatic disqualifying offenses.

After the Driver Policy was introduced, Sprint required employees to take a driving safety course, execute a driver's agreement, and consent to a motor vehicle records check. The driver's agreement required employees to promise, among other things, that they would immediately inform their supervisor should they ever fail to meet the company's driving standards, and that in such instances they would immediately stop driving any vehicle on Sprint company business. The agreement further stated that employees who failed to comply with the agreement were subject to discipline, including immediate termination.

Sprint evaluated each employee's motor vehicle records to determine whether they met the standard for a safe driving record. Employees who did not were given the opportunity to apply for non-driving positions, but those who were unable to find a non-driving position at Sprint were terminated. A few employees who had excessive points were given waivers that allowed them to continue in their current jobs if they agreed not to drive in connection with Sprint business.

Because Alvarado's position with Sprint required him to drive, he was subject to the Driver Policy. On September 9, 2010, Alvarado executed a Driver Agreement stating that he 1) understood Sprint's Driver Policy; 2) has reviewed the points scale and currently meets the driving standard; 3) agreed to inform his supervisor should he ever fail to meet the driving standard; and 4) understood that violations of the Driver Policy would be subject to disciplinary action including immediate termination.

4

Around the time the Driver Policy was rolled out, Alvarado told Marable that he had two DUIs.  Marable told Alvarado that they would wait to see what Alvarado's motor vehicle records showed, and then possibly they would see about an accommodation.  On October 5, 2010, Sprint obtained Alvarado's motor vehicle records, which showed that his driver's license had been suspended.  On October 7, 2010, Sprint's human resources representative Christy Milroy ("Milroy") informed Marable that Alvarado's license was suspended, that he must immediately stop driving on Sprint business, and that she would set up a meeting to discuss the result of the motor vehicle report with Alvarado.

Milroy met with Alvarado and Marable on October 11, 2010, and during the meeting Alvarado disclosed that he had been arrested for a DUI in April 2010.  He stated that his license had been suspended pending adjudication of that DUI charge, but he had applied for and received an occupational license.  Neither Alvarado nor Marable mentioned Alvardo's 2006 DUI conviction during this meeting.  Milroy prepared a statement to review and execute based on the information discussed in the meeting.  Alvarado returned the statement without making any changes.

Marable, Milroy and Marable's supervisor Carolyn Rehling ("Rehling") discussed Alvarado's options, and agreed that they would offer Alvarado a waiver to the Driver Policy for his 2010 DUI if Alvarado agreed not to drive himself on Sprint business.  On November 16, 2010, Marable provided Alvarado with a Driving Position

Accommodation Form (the "Accommodation Form").  Because of the Accommodation Form, Alvarado was not terminated or required to apply for other positions.  Instead, he was able to keep his job as a Branch Sales Manager even though he could no longer drive on company business, and his driving record did not meet the standards in Sprint's Driver Policy.  The Accommodation Form provided a waiver of the Driver Policy, and stated that Alvarado could not drive while on Sprint business.  Alvarado was allowed to travel on Sprint business, but he was required to carpool with another Sprint employee, use public transportation, or take a taxi.  The Accommodation Form stated that Sprint was providing Alvarado with an accommodation for only the driving function of his position, and expressly stated that it "does not alter the employment at will relationship between Sprint and the Employee, meaning Sprint or the employee may terminate the employment relationship at any time for any lawful reason."  Alvarado agreed to the accommodation and executed the form.

Alvarado was arrested for a third DUI on February 6, 2011, and was released on bond pending trial. About a week later, Alvarado told Marable about the third arrest. As he had previously, Marable responded that they should wait for the arrest to appear on Alvarado's motor vehicle report and then deal with it at that point.

On Friday, January 20, 2012, Alvarado was arrested again because his bond related to the February 2011 DUI charge had been revoked.  Because of this arrest, he missed a mandatory meeting he had scheduled with his subordinates that day.  Marable

called to see why he had not reported to work, but was unable to reach Alvarado.

After he did not hear from Alvarado on Friday, Marable received an email on Saturday, January 21 from what seemed to be a personal email account belonging to Alvarado's wife. The email appeared to be from Alvarado, and stated that a "family issue" had come up and that he would need to be away from work for the next week. Marable thought it was odd that Alvarado would send an email from a personal email address rather than using his Sprint email account or cell phone.  Marable felt that a Sprint employee should not be conducting company business through a personal email address, especially one that did not appear to belong to the employee. Therefore, Marable discussed the situation with Deborah Neal ("Neal"), another Sprint Territory Manager.  Marable and Neal decided to check public records to see if Alvarado had been arrested.

After searching online records for Tarrant County, they found that Alvarado was "In Jail" for the offense of "DWI-FELONY REPETITION."  Therefore, Marble emailed Alvarado on Monday, January 23, 2012 and told him he would need a written explanation for his absence.  Alvarado replied early the next day, told Marable that he was back at work, and stated that in "haste" he had left his computer and phone behind when dealing with the family emergency that had occurred, and thus had asked his wife to relay his circumstances to Marable.  Alvarado did not disclose that the reason for his absence was that he had been in jail due to his third DUI.

Because he believed Alvarado had been less than truthful, Marable arranged a telephone call with Alvarado and Neal to further discuss the issue.   While on the call, Marable asked Alvarado if he had been in jail because he had been arrested for a third DUI.  Alvarado  denied having been arrested for a DUI, but after further probing, admitted that he had been in jail over the weekend because of an issue with his bond status after being arrested for a third DUI. Marable felt that Alvarado should have told him up front the real he did not appear for work on January 20, rather than referring to a "family emergency."   In Marable's view, Alvarado's conduct was dishonest and a violation of the Code of Conduct.   Marable terminated Alvarado's employment and ended the telephone call.

Alvarado sued Sprint and Marable in state court in July 2012, and they subsequently removed the case to this court.  Alvarado brought a claim against Sprint for wrongful termination as an exception to the employment at will doctrine, and claims against Marable for fraud and defamation.   He later dismissed his claims against Marable, leaving only his wrongful termination claim against Sprint.  Sprint now moves for summary judgment on this claim.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *Celotex*

8

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322-25, 106 S.Ct. at 2551-54.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

## III.    Defendant's Motion for Summary Judgment

Alvarado contends that he was wrongfully terminated by Sprint because the Accommodation Form created an exception to employment at will that prohibited Sprint from discharging him without just cause. Sprint disagrees, and moves for summary judgment on this claim, arguing that Alvarado's termination was consistent with the employment at will doctrine, that the Accommodation Form did not create a "just cause" employment contract between Alvarado and Sprint, and that Alvarado's belief that Marable made a mistake by terminating him does not support a claim against Sprint. The court will address each of these arguments below.

A.     **Applicable Law**

The parties agree that the general rule in Texas is employment at will, which means that absent a specific agreement to the contrary, either an employee or employer may terminate the employee's employment at will, "for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998); *see also Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex. 1993) (employment at will is terminable at any time by either party, with or without cause"). "At will employment exists when the parties do not limit the ability of either employer or employee to terminate employment at their will." *Goodyear Tire & Rubber Co. v. Portilla,* 879 S.W.2d 47, 48 n.1 (Tex. 1994).

"The employment at will doctrine has always been subject to specific contractual agreement defining an exception." *Id.* at 51.  To overcome the at will presumption, the employer must unequivocally indicate a definite intent to be bound not to discharge the employee except under clearly specified circumstances.  *Sawyer v. E.I. DuPont De Nemours & Co.,* 689 F.3d 463, 467 (5th Cir. 2012), *citing Brown,* 965 S.W.2d at 502; *Talford v. Columbia Med. Ctr. at Lancaster Subsidiary, L.P.,* 198 S.W.3d 462, 464 (Tex. App. – Dallas 2006, no pet.). Because the employment at will relationship may only be altered by contract or "express rules or policies" limiting the conditions upon which an employee may be terminated, Alvarado must show how one of these exceptions applied to his employment.  *Muncy v. City of Dallas,* 335 F.3d 394, 398 (5th Cir. 2003).

10

### B.    Analysis

Alvarado argues that he should survive summary judgment because Sprint waived his at will employment policy for him by granting the driving accommodation.  Thus, he contends that Sprint needed good cause to terminate his employment, and that because it did not have good cause, Sprint is liable to him for wrongful termination.  The court disagrees.

As the court stated above, the general rule in Texas is for employment at will. *Brown,* 965 S.W.2d at 502. To raise a genuine issue of material fact regarding any alleged waiver of his at will employment status, Alvarado must show that his employment relationship with Sprint was altered either by express rules or policies or by contract. It is undisputed that Sprint's express policy for the majority of its employees is employment at will, and that the employment at will relationship between Sprint and its employees can only be altered by a written agreement signed by the company's CEO or COO.  It is undisputed that Alvarado did not have such an agreement with Sprint.

Instead, Alvarado relies on *Goodyear* to assert that Sprint waived the right to discharge him at will by granting him the driving accommodation.  The court does not read *Goodyear* as broadly as Alvarado does.  There, an employee was granted an exception to a single company policy regarding nepotism.  879 S.W.2d at 49-50.  Seventeen years later, the employee was discharged because the company determined her employment to be in violation of the nepotism policy.  *Id.*  However, the court described Goodyear's

11

waiver of the nepotism policy as a "single, isolated, approved exception," and went on to reiterate that the employee's employment status was "otherwise at-will". *Id.* at 50-52.

The Accommodation Form itself expressly states that the accommodation did not alter the employment at will relationship, and further, Alvarado's own testimony was that he understood his employment to have been at will throughout the duration of his tenure at Sprint. *See Sawyer,* 689 F.3d at 467 (to overcome the at will presumption, employer must "unequivocally indicate" a definite intent to be bound not to discharge the employee except under clearly specified circumstances); *see also Brown,* 965 S.W.2d at 502. Here, there is no "unequivocal" indication by Sprint to alter Alvarado's at will status. In fact the form unequivocally states the opposite – that despite the accommodation of Alvarado with respect to its Driver Policy, his employment would continue to be at will. Based upon the applicable law and the summary judgment record, the court cannot find that the driving accommodation equaled a broad waiver of by Sprint of its at will policy.

In addition to reconfirming that Alvarado's employment remained at will, the Accommodation Form does not specifically state any limitations whatsoever on Sprint's right to terminate Alvarado's employment at will. More specifically, the form states only that it will accommodate Alvarado with regard to the driving function of his position. It does not specify any circumstances under which Sprint agreed not to discharge him, nor does it state that the accommodation would continue indefinitely or would not

12

revoked or changed regardless of what may happen in the future.  Alvarado admits that the Accommodation Form  is silent as to the consequences of future points or violations on his driving record.  Therefore, Sprint's discharge of Alvarado for dishonesty and violation of the Code of Conduct did not amount to wrongful termination.

Sprint also argues in the alternative that even if the Accommodation Form had created an exception to employment at will (which it did not), it still had just cause to terminate Alvarado because he did not tell Sprint about the third DUI in 2011, and because he was not completely truthful about his whereabouts on January 20, 2012, when he did not report to work on the day of an important staff meeting.  Because Alvarado has testified that he did tell Marable about the 2011 DUI, the court must view these facts in the light most favorable to Alvarado.  However, with regard to the events of January 20, 2012, the court finds that there is no genuine issue of material fact whether Sprint had just cause to discharge Alvarado.

Although Alvarado said he was dealing with what he described as a family issue, Marable believed that he did so to actively conceal the fact that he was in jail due to a problem with his bond related to the 2011 DUI.  It is undisputed that Alvarado was not wholly forthcoming about his whereabouts until Marable confronted him with the information he obtained from the Tarrant County website.  Because he had failed to report to work, and had not been completely truthful about why, Marable believed that

Alvarado had violated Sprint's Code of Conduct.  If just cause were required to discharge Alvarado (which it is not), the court finds that Marable did have just cause.

There is no evidence in the summary judgment record suggesting that Sprint intended Alvarado to be anything other than an at will employee, and Alvarado admits that he also understood his employment to be at will.  Therefore, Sprint was free to discharge him for any reason, or no reason at all, and with or without cause.  *Brown,* 965 S.W.2d at 502; *Federal Express,* 846 S.W.2d at 283.  The court must grant summary judgment for Sprint on Alvarado's wrongful termination claim.

### IV.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted,** and Plaintiff's claim is hereby **dismissed with prejudice.**  Judgment will be entered by separate document.

**SO ORDERED**.

Signed August 28th, 2013.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE